CHARLEY FERGUSON, Appellant, v. JOHN FERGUSON, Appellee.

**TRIAL:** Direction of Verdict—Repeating Request. Overruling a motion for a directed verdict at the close of plaintiff's evidence is no bar to sustaining such motion when repeated at the close of all the evidence.

**EVIDENCE:** Person as Exhibit. Conceding, *arguendo*, that a human being may be offered as an exhibit, yet a formal offer is properly rejected when the person in question was a witness and fully examined before the jury.

**INSANE PERSONS:** Grounds for Guardianship. A jury question on the issue of guardianship is presented by evidence that the person in question (a) is of great age, (b) lacked all education, business experience, training, and capacity, (c) was weak mentally, and (d) had been overreached in a transaction that would render him a pauper.

*Appeal from Jasper District Court.*—HENRY SILWOLD, Judge.

MAY 7, 1918.

ON an application to have a guardian appointed over the property of defendant, John Ferguson, there was a trial to a jury, at the close of which the trial court directed a verdict for the defendant; and the plaintiff appeals.—*Reversed.*

*Tripp & Tripp,* for appellant.

*E. M. S. McLaughlin* and *Cragan Brothers,* for appellee.

SALINGER, J.—I. We gather one assignment to be that the court erred in sustaining a motion to direct verdict, made at the close of all the testimony, because it had over-

1. TRIAL: direction of verdict: repeating request.

ruled such a motion at the close of the testimony for the plaintiff. The point is not well made. We have very many times held that, where such a motion is overruled at the close of the testimony for the plaintiff, such ruling will not be reviewed on appeal where the defendant puts in testimony and does not renew the motion at the close of all the testimony. By inevitable implication, this settles that overruling the motion when first made is no bar to sustaining it when it is repeated at the close of all the evidence.

II. Another complaint is that the court erred in sustaining objections to a proffer by plaintiff of defendant as an exhibit. If we assume that plaintiff had the right to

2. EVIDENCE: person as exhibit.

tender the defendant as an exhibit, there is still no room for complaint here, because the plaintiff made the defendant a witness, and he was examined and re-examined and cross-examined before the jury, which certainly constituted exhibiting him to the jury.

III. The substantial question is whether there was error in directing a verdict for the defendant. It will serve no useful purpose to go into an elaborate discussion

of the testimony pro and con. The jury
might well have found, had it been permit-
ted to act, that, in dealing with defendant's
son Cress, defendant was transacting busi-
ness with a loving, indulgent, and dutiful child; that trans-
ferring all his property to this son was an act of prudence,
and wholly advantageous to the father; and that there was
no occasion to appoint a guardian for the father. But it
does not sustain directing a verdict for the defendant that
the jury might thus have found. The case must go to the
jury if, as we think, it might also have found that this
father, a man of very great age, lacked all education, all
business experience, training, and capacity, and was weak
mentally; that the father had been overreached; and that
permitting the transaction between father and son to stand
would be sanctioning the abuse of a confidential relation
made use of to make a pauper of the father. We cannot
say, as matter of law, that the jury might not have found
this. Take a few instances. There was testimony that the
father thought he left money in a bank to pay a note, which
money had been realized from selling oats. The cashier of
the bank said that no money was put into the bank. There
is testimony from which the jury could find that the father
had practically no realization of a transaction by which he
virtually made a gift of all he had in the world to this one
son, and left himself destitute except for the bounty of that
son. There is testimony that, at one time, when there was
talk about how high corn was, the defendant imagined he
had 600 bushels to sell, when he had none. There is testi-
mony by those who knew defendant well that he has been
growing childish constantly, and that his mind was badly
warped. There is testimony that defendant is unable to
tell what year he was born in, when he moved from Ohio,
or how long he lived in Illinois, and that he does not know
which one of his children is the oldest, nor the order in

3. INSANE PER-
SONS: grounds
for guardian-
ship.

which they were born. An incident is testified to where the defendant talked with one of his sons about 20 minutes, then walked across the yard to a gate, and, returning to this son, inquired of the son when he, the father, had come, and where he had come from, to which the·son replied the father had been talking to him just a few minutes ago,—a fact which the father could not remember. Again, there is testimony that, when the wife of the defendant was not expected to live, he left her in the morning, to hunt an old horse; that, not returning when night came on, the children went in search, and when they found him, he began to cry, and said, speaking of his wife, "I want to see Ann, but she is dead." On being told his wife was not dead, he replied that one Joe had told him so, but he, defendant, knew she was not going to die for a week or ten days.

We are not overlooking that the defendant was a witness, and our views on the coherency of his testimony might be quite controlling, were we trying this matter de novo. But we are not, and the point is two-edged. The printed record cannot show us how defendant acted and spoke while he was testifying before the jury, and we are in no position to say that that which we did not see and hear might not well have induced the jury to find against the capacity of the defendant. We have already gone into detail more than can be of value to anyone. We are not as much as intimating whether defendant should or should not have a guardian. But we are constrained to hold that, upon the record, which we have examined with great care, this was a fair question for the jury. It follows that the order and judgment below must be reversed.—*Reversed and remanded.*

PRESTON, C. J., LADD, GAYNOR, and STEVENS, JJ., concur.